707 So.2d 1225 (1998)
Tammie Jo BOYKIN, et al.
v.
LOUISIANA TRANSIT COMPANY, INC., et al.
No. 96-C-1932.
Supreme Court of Louisiana.
March 4, 1998.
Rehearing Denied April 24, 1998.
*1226 Kenneth C. Fonte, Metairie, Kimberly A. Danehower, for Applicant.
Owen J. Bradley, Michael R. Guidry, Frederick W. Swaim, Jr., New Orleans, for Respondent.
LEMMON, Justice.[*]
This is a tort action arising from an accident in which plaintiff, a pedestrian crossing a highway at a controlled T-intersection, was struck by a vehicle that entered the intersection on a red traffic signal. The principal issue is whether the Department of Transportation and Development (DOTD), the lone remaining defendant at trial, was liable for failing to set the cycle for the traffic signal so as to afford pedestrians a longer period of time to cross the highway under the protection of a red signal stopping highway traffic. We granted certiorari to examine the DOTD's conduct under a duty-risk analysis.

Facts
The daytime accident occurred at the "T" intersection of U.S. Highway 61 and North Howard Avenue in suburban Jefferson Parish. Highway 61 was a main traffic artery for vehicular traffic into and out of New Orleans. At that intersection, which was controlled by a functioning traffic signal, Highway 61 was an east-west divided four-lane highway with an twenty-three-inch-wide median. The posted speed limit was forty-five miles per hour. On the north side of the highway was a shopping center and a residential subdivision. To the south of the highway was a wide drainage canal. Located on the south shoulder of the highway was a stop for eastbound transit buses, which picked up and discharged most of the pedestrians who crossed the highway at that point.
The layout of the intersection is shown on the following annotated exhibit:
*1227 
The daylight accident occurred in the late afternoon on a clear dry day. Plaintiff was crossing Highway 61 from north to south, from the shopping center area to the bus stop on the south side of the highway. North Howard Avenue was on her immediate left. She first had to cross the two westbound lanes of Highway 61 and then the two eastbound lanes. As the traffic light turned red for Highway 61 traffic, a vehicle driven by Clyde Lindsey was approaching from plaintiff's left, westbound on Highway 61 in the lane closest to the median. Plaintiff started across the westbound lanes and was struck by the left front of the Lindsey vehicle, which had passed a vehicle stopped for the light in the right lane and entered the intersection on a red light. After the accident, Lindsey told the investigating trooper that the setting sun blinded him and that he ran the red light, but did not know what he had hit.[1]
The statements of four eyewitnesses were presented in a police report introduced by stipulation. An eastbound motorist, who stopped in the inside lane of Highway 61 in obedience to the red light, saw plaintiff leave the shoulder and begin the crossing. When plaintiff saw the Lindsey vehicle, she tried to run, but was struck by the car.
A motorist on Howard, who had stopped for the red light, began to cross the intersection when the light turned green (apparently intending to turn left into the eastbound lanes). He stopped abruptly when he saw Lindsey was not going to stop, and he saw the Lindsey vehicle strike plaintiff.
A pedestrian, waiting near plaintiff to cross the highway, saw plaintiff start to cross *1228 when "traffic stopped" and saw Lindsey strike her.
A pedestrian, located at the bus stop on the south side of the highway, saw plaintiff start to cross the highway and saw Lindsey's car strike her.
Plaintiff filed this action against Lindsey, the DOTD and others. Lindsey and the defendants other than DOTD either settled or were dismissed prior to trial.
Plaintiff subsequently died from unrelated causes.[2] Prior to her death, she gave two depositions. Because of the brain injury she suffered in the accident, she was unable to remember anything about that event or any events for some time prior thereto. Plaintiff remembered that she had often crossed the intersection to catch the bus, perhaps three times per week. She stated that she always waited for the light to change and then checked to see that Highway 61 traffic had stopped. She also always checked to see that no cars were turning towards her from Howard Avenue on her left. She further stated that she had no trouble seeing the traffic signals. When asked to identify problems at the intersection, she complained that it was "too busy", there was no marked pedestrian cross-walk, and the "cars go too fast."
At trial, plaintiff's counsel presented several theories as the basis for the DOTD's liability. The theory accepted by the trial judge was that the DOTD breached its duty to provide an intersection, controlled by a traffic signal, that did not present an unreasonable risk of harm for motorists or pedestrians. The specific breach asserted by plaintiff's counsel was that the DOTD negligently set the timing of the traffic signal so that there was too short a period of red light for highway traffic, which resulted in too short a period for a pedestrian to cross the entire highway. Because of this timing deficiency, counsel argued, a pedestrian in plaintiff's position had such a short period of time for a protected crossing that the pedestrian would have to assume traffic in the nearest (westbound) lanes would stop for the red light, and to look ahead to the farther (eastbound) lanes in order to cross the entire highway before the light turned green for highway traffic.[3]
The other evidence in the bench trial consisted primarily of investigative and expert testimony. The trial court rendered judgment for plaintiff, reasoning that the intersection presented an unreasonable risk of harm for plaintiff because the DOTD failed "to time the signals to give her sufficient time to cross the highway." The judge explained that the brief period of time allowed for pedestrians to cross the highway while the light was red for highway traffic, a fact known by plaintiff, "took away [plaintiff's] ability to observe traffic and protect herself." In the trial judge's view, plaintiff "did not have time to make sure that the Lindsey vehicle had stopped" and was forced to assume it would stop, because "she knew if she took the time to make sure that westbound traffic was completely stopped, the eastbound traffic would likely start moving by the time she got to the center of the roadway," where "she had no place to stop in the middle."
The trial judge concluded that the forced shift of attention away from the westbound lanes was a "substantial cause" of the accident and that the accident would not have occurred if the DOTD had set the signal to provide sufficient time for pedestrians to cross the highway. Because plaintiff did not have time to observe traffic in all three directions (westbound, eastbound, and turning right from Howard onto the highway) to make sure it was safe to cross, she did not have time to make sure Lindsey would stop.
The judge allocated forty percent fault to the DOTD, with sixty percent to Lindsey and zero to plaintiff.
The court of appeal affirmed. 95-888 (La. App. 5th Cir. 6/25/96); 676 So.2d 1100. The court of appeal noted that the DOTD failed *1229 to take pedestrian crossing time into account when setting the timing of the traffic signal cycle and the "timing would very often leave pedestrians with insufficient time to cross with the light." Id. at 1103. Quoting the trial judge, the court of appeal concluded that "if [plaintiff] had been given sufficient time to observe traffic before proceeding, she would have been in a position to avoid this accident and most likely would have." Id.
This court granted certiorari to consider the DOTD's liability under the circumstances of this case. 96-C-1932 (La.11/8/1996); 683 So.2d 253.

History of the Signal Light
Plaintiff's counsel asserted several theories of recovery, all of which were based on the DOTD's alleged violations, in several ways, of its duty to provide a signal-controlled intersection that did not present an unreasonable risk of harm for motorists and for pedestrians. This opinion focuses on that duty and on the specific breach[4] found by the trier of fact, namely, the DOTD's failure to set the timing of the traffic signal so as to allow pedestrians sufficient time to complete the forty-eight-foot crossing[5] of the highway in which the median was not of sufficient width to provide a safe haven.
The traffic signal, which was first installed at the intersection in 1969, initially operated on an eighty-second cycle, with sixteen seconds for vehicular traffic on Howard to proceed (12.8 seconds of green and 3.2 seconds of amber) while the light was red for highway traffic. Subsequent developments led to a change in the timing cycle. First, legislation adopted in 1982 permitted a right turn on red, and a large percentage of Howard traffic no longer needed a green signal to turn right from the right lane. Additionally, the DOTD received frequent complaints about highway motorists' having to stop for a red signal at the intersection when there was no crossing traffic from Howard. Based on these factors, the DOTD determined that an actuated signal would eliminate unnecessary stops for the 24,000 vehicles on the highway at that intersection daily and accordingly would reduce the risks of collisions with unnecessarily stopped vehicles.[6]
With the actuated signal, the light remained green for highway traffic as long as there were no vehicles on Howard. When a vehicle approached on Howard to cross the intersection (not to turn right from the right turn lane), the light turned red (if the minimum time for the green signal for highway traffic had elapsed) for highway traffic for a period varying between 10.9 and 20 seconds. [7] Thus the new timing cycle changed the time for pedestrian crossings protected by a red highway signal from sixteen seconds to eleven to twenty-one seconds.
The DOTD did not install a push-button for crossing pedestrians to push to activate the side street green light because studies revealed no significant pedestrian activity at that intersection and no previous pedestrian accidents.[8] The purpose of the DOTD's reducing the time of the red signal for highway *1230 traffic was to reduce the significant risk of collisions by highway motorists with stopped vehicles by reducing the number of stops of highway traffic. The DOTD did not consider the reduced time for pedestrian crossing protected by a red highway signal to present an unreasonable risk of harm for pedestrians, since some pedestrians crossed at intersections without traffic lights all along the highway in that area, and there had never been a pedestrian accident or a complaint about difficulty for pedestrians to cross at this particular intersection.

Duty-Risk Analysis
This negligence case is properly examined under the duty-risk analysis.[9] The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). David W. Robertson et al., Cases and Materials on Torts 83-84 (1989); Fowler v. Roberts, 556 So.2d 1 (La.1989)(on original hearing).
Many cases presenting a duty-risk analysis do not adequately distinguish the duty element and the breach of duty element. In a proper duty-risk analysis, it is helpful to identify (1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty.
In the present case, the duty of the DOTD was to design and provide a signal-controlled intersection that did not present an unreasonable risk of harm to motorists and pedestrians. The conduct by DOTD that allegedly constituted a breach of that duty was the failure to set the timing cycle of the signal so as to provide an adequate period of time for a pedestrian to cross the entire highway while the signal was red for highway vehicles.

(1) Cause-in-Fact
Generally, the outset determination in the duty-risk analysis is cause-in-fact. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970). Cause-in-fact usually is a "but for" inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct.[10]
In the present case, the cause-in-fact inquiry, which focuses on the conduct of the defendant alleged to constitute a breach of duty, is whether the accident would not have occurred but for the DOTD's allowing only eleven seconds of red signal for highway traffic. Stated otherwise, the question is whether the accident would have been prevented if the DOTD had allowed additional time in the cycle for the red signal for highway traffic.
Counsel for plaintiff asserts that she knew the time for a complete crossing was short and that the insufficient red signal for highway traffic and the absence of a refuge island forced her to rush her crossing without sufficient time to insure that westbound traffic would obey the red signal. Counsel argues that plaintiff, but for the DOTD's allowing insufficient time for the highway red signal, would have had adequate time to insure that westbound vehicles would stop for the red signal if she had not been rushed to complete the crossing before the light turned green for highway traffic. Counsel accordingly argues that the DOTD's negligent conduct in setting *1231 the timing of the traffic signal was a cause-in-fact of the accident.
On the other hand, plaintiff did not mention in depositions that she believed the light cycle at the intersection was too short or forced her to rush across the highway, or that she had been required in her frequent crossings at that intersection to disregard westbound traffic in any manner because of her hurry to complete the crossing of the eastbound lanes.
The trial judge's finding regarding cause-in-fact is a factual finding which is entitled to great deference. Arguably there was insufficient evidence of any belief by plaintiff of a "too short" cycle attributable to the DOTD that undermined her ability to pay proper attention to westbound vehicles that might disregard the red light. Nevertheless, because we reverse the judgment on the breach of duty inquiry, we pretermit determination of the correctness of the trial court's ruling on this arguably close cause-in-fact inquiry.

(2) The Duty Inquiry
There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another. In some cases, the duty is refined more specifically that the defendant must conform his or her conduct to some specially defined standard of behavior. Duty generally is a question of law, and the judge will instruct the jury in a jury trial on the applicable duty or will apply that duty in a bench trial.
The duty at issue in the present case, as previously stated, was the DOTD's duty to design and provide a signal-controlled intersection that did not present an unreasonable risk of harm to motorists and pedestrians. There is no dispute that a duty for the DOTD to conform its conduct to this standard existed in this case.

(3) The Breach of Duty Inquiry
The alleged breach of duty in this case was the DOTD's failure to set the signal timing so as to allow pedestrians sufficient time to complete the crossing of the entire highway, in the absence of a median that offered a safe haven.
Breach of duty is a question of fact, or a mixed question of law and fact, and the reviewing court must accord great deference to the facts found and the inferences drawn by the finder of fact.
In the present case, much of the expert evidence was directed to the cause-in-fact issue, as was a great deal of the argument in the appellate court and this court. The trial court and the court of appeal also directed most of their attention to determining whether the accident would have been avoided if the DOTD had set a longer red signal for highway traffic in the timing cycle.
On the breach issue, the experts presented by the plaintiff opined that there was insufficient protected time for a pedestrian to cross the highway completely and that this deficiency was a breach of the DOTD's duty. They pointed out that a pedestrian walking at four feet per second would take twelve seconds to cross the highway, in addition to the perception and reaction time between the changing of the signal and the pedestrian's beginning to walk. The principal expert, who attempted several crossings in preparing for trial, observed that "[t]he only way I found I could safely go across this intersection is to break the law and pass [while the light is green for highway traffic] when the gaps in traffic occur."
The determination of whether the DOTD violated its duty of reasonable care to pedestrians includes balancing the probability and seriousness of any expectable injury with the burden of taking adequate precautions against the risk of such injury and any adverse consequences of such precautions. In making this determination, one must keep in mind the nature of the area (a suburban highway as opposed to a downtown business district street) and the nature of all of the risks at the particular intersection.
Prior to the DOTD's installing the signal initially at the intersection, pedestrians presumably crossed the highway without the protection of a red signal for highway traffic by timing their crossings between "gaps in traffic." Moreover, at the intersections one block in either direction, and at numerous other intersections in the area, there are still no traffic control devices which might assist *1232 pedestrian crossings by stopping traffic. The signal at the pertinent intersection was installed initially to prevent the risk to vehicular traffic of right angle collisions, and the timing was subsequently changed to prevent the risk of collisions with stopped vehicles. The design change of the timing of the red signal for highway traffic to as little as eleven seconds balanced the benefit to highway traffic safety against concerns for pedestrian safety. Such concerns are significant where there are pedestrian dangers. At this intersection, however, there was a very low volume of pedestrian traffic and a total absence of previous pedestrian injuries.
Of course, there are always risks to pedestrians who must cross the path of vehicular traffic. Under the timing cycle set by the DOTD, an average pedestrian could reach the last of the four lanes while the light was red for highway traffic.[11] However, when the pedestrian has legally entered the fourth lane of the unmarked cross-walk at the intersection, a highway motorist is required to yield the right of way to the pedestrian to complete the crossing. La.Rev.Stat. 32:232(1)(a). Moreover, the risk that a north-to-south pedestrian would be struck by an eastbound motorist violating the pedestrian's right-of-way was not the risk that materialized in this case to cause plaintiff's injury, namely, the risk that a westbound motorist would ignore the red signal and strike an inattentive pedestrian.[12]
Finally, a risk-benefit analysis undermines plaintiff's theory and supports the DOTD's design decision. The principal concern of a design engineer in setting the timing cycle at this intersection was to avoid the hazards created by unnecessary stopping of vehicles traveling the busy highway. The longer the red signal for highway traffic, the greater the number of vehicles stopped; and the greater the number of vehicles stopped on the highway, the greater the risk of a collision with a stopped vehicle. A timing design that increased the length of the red signal for highway traffic may have enhanced slightly the safety of the few pedestrians who crossed at that intersection, but clearly would have created greater dangers for the heavy volume of highway traffic. Considering the very low volume of pedestrian traffic (the bus stop was the only destination for pedestrians on the south side of the highway) and the total absence of any history of pedestrian accidents or complaints at this particular crossing, we conclude that the DOTD was not negligent in its design of the timing cycle for the traffic light cycle at this intersectionthat is, the DOTD did not breach its duty to provide a signal-controlled intersection that was reasonably safe for motorists and pedestrians. In view of the balance struck by the DOTD in the light of all the considerations in this record, the trier of fact's determination that the DOTD negligently designed the timing cycle was not supported by the record and was clearly erroneous.
For these reasons, the judgments of the lower courts are reversed, and the action is dismissed.
KNOLL, J., concurs with reasons.
TRAYLOR, J., concurs for reasons assigned by KNOLL, J.
JOHNSON, J., dissents and assigns reasons.
KNOLL, Judge, concurring.
I concur in the above captioned opinion. In my view, the tortfeasor's running the red light was the sole cause of the accident. There was no record evidence to support the plaintiff's contention that the timing of the light deprived her of the opportunity to keep a lookout. Therefore, discussion of DOTD's duty with regard to the timing of the light is not triggered. I find that regardless of the *1233 timing of the light, the inattentive motorist was an overriding and intervening cause of the plaintiff's injuries.
JOHNSON, Judge, dissenting.
Tammie Jo Boykin suffered multiple injuries, including a severe brain injury when she was struck by an automobile while attempting to cross Airline Highway where it intersects with North Howard Avenue in Jefferson Parish.
In my mind, the record established that the State Department of Transportation and Development (DOTD) owes a duty to pedestrians at intersections using trafficactuated signals. (Manual on Uniform Traffic Control Devices, Section 4C-12). The signal was set to accommodate a smooth flow of vehicular traffic, without proper regard for those pedestrians who crossed Airline Highway to board buses.
The Trial Court found that DOTD had notice of the improper timing of the signals and chose to ignore the Manual requirements.
I would affirm the decisions of the trial court and appellate court. DOTD owed a duty to this pedestrian and breached that duty. The state's negligence resulted in injury to this plaintiff, and she is entitled to relief.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] Lindsey died before his deposition could be taken. However, a deputy sheriff, who was traveling in the same direction on Highway 61 and arrived at the scene immediately after the accident, testified at trial that the sun did not prevent him from seeing the traffic signal or the color of the light.
[2] Though her children have been substituted as parties, we continue to refer to her and her successors as plaintiff.
[3] At neither of plaintiff's depositions did she mention that she thought the light cycle was too short, nor that she felt she had to rush across the highway, nor that she had to take her eyes off of the traffic in the nearer lanes in order to time her crossing of the farthest lanes.
[4] Plaintiff also asserted the DOTD breached its duty by:

1. failing to provide a push button signal for pedestrians to operate;
2. failing to provide a back plate for the traffic lights that would allow highway motorists looking into the sun to see the color of the light;
3. failing to provide a proper pedestrian cross-walk;
4. failing to provide an adequate refuge island between the eastbound and westbound lanes.
[5] There were 22.8 feet of roadway on each side of the median, which was 1.9 feet wide, for a total of 47.5 feet.
[6] The primary purpose for the initial installation of the signal was to prevent right angle collisions by highway vehicles with vehicles turning into or coming out of Howard. While the signal reduced that risk, the stopping of highway motorists increased the risk of collisions with stopped vehicles. The 1982 change that lessened the number of required stops logically lessened the risk of collisions with stopped vehicles.
[7] The light was green on Howard for five to fifteen seconds, depending on the number of vehicles on Howard; the green terminated 0.9 seconds after the vehicle crossed the actuator loop imbedded in the road surface; the light was amber for four seconds; and the light was red in all directions for one second. The all-way red was designed to protect against the risk of motorists who unsuccessfully try to "make" the amber signal.
[8] In the three years preceding the accident, 25,000,000 cars passed this intersection, and there were no reported pedestrian accidents.
[9] While plaintiff sought recovery under theories of both negligence and strict liability, only negligence is truly implicated. The principal difference between negligence and strict liability is the absence of any scienter requirement in most strict liability cases, but La.Rev.Stat. 9:2800 reimposes that requirement in actions against the state. Moreover, as to any unreasonable risk of harm created by the DOTD in fixing the timing of the traffic light cycle, the DOTD clearly had knowledge of the timing cycle that it designed.
[10] When there are concurrent causes of an accident which nevertheless would have occurred in the absence of one of the causes, the proper inquiry is whether the conduct under consideration was a substantial factor in bringing about the accident.
[11] A pedestrian starting to cross at the change of the light and walking at the average speed of four feet per second would travel forty-four of the forty-eight feet while the light is red for highway traffic and would be just entering the furthest lane when the light turns green.
[12] This risk factor would be more properly addressed in the scope of liability inquiry if we reached that point of the analysis. Nevertheless, we note that there is little ease of association between the risk created by the alleged breach of duty in this case and the injury sustained by plaintiff when struck by an unobserved westbound motorist running a red light. Hill v. Lundin & Assoc., 260 La. 542, 256 So.2d 620 (1972).