996 So.2d 9 (2008)
Cynthia BROOKS, et al.
v.
TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, et al.
No. 2007-C-1367.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2008.
*10 Nat G. Kiefer, Jr., Kiefer & Kiefer, Metairie, Louisiana, for Transit Management of Southeast Louisiana, Inc., the Regional Transit Authority and Zachery Dennis.
Darryl M. Breaux, New Orleans, Louisiana, for Cynthia Brooks.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
In this personal injury action, defendants Transit Management of Southeast Louisiana, Inc. ("TMSL"), the Regional Transit Authority ("RTA") and RTA bus driver Zachary Dennis seek review of the denial of their motion for summary judgment.
Plaintiff Cynthia Brooks, on behalf of her minor child Donald Brooks, filed the instant action naming the above-named defendants and Lexington Insurance Co. ("Lexington"). Defendants-relators filed a motion for summary judgment. The motion was heard and was denied by the trial court.
Relators filed their writ application whereupon this Court denied the writ without reasons. The Louisiana Supreme Court granted the writ application of relators and remanded this case for briefing, oral argument and an opinion by this Court.
For the following reasons, the writ is denied.

*11 FACTS
On June 5, 2000, at approximately 5:30 p.m., RTA bus driver Zachary Dennis was operating a RTA bus in a southbound direction on Desire Street, a two-lane thoroughfare with single lanes of north and southbound traffic. He picked up a passenger at the bus stop at N. Dorgenois Street. As Dennis drove off he was flagged down by the operator of a motor vehicle coming toward him. The motorist informed Dennis that a boy had fallen off the bus and was lying in the street. The child was Donald Brooks, plaintiff's son. Plaintiff subsequently filed the instant action.
The trial court stated at the hearing on the motion for summary judgment that it was denying the motion because there was a question as to whether or not Donald Brooks was on the side of the bus where the driver should have or could have seen him. The trial court specifically stated: "Certainly, a driver can't pull off when you know somebody is hanging on to your car." The court noted that under comparative fault the plaintiff could possibly recover even if the child was, for example, ninety-five percent (95%) at fault.
RTA bus driver Zachary Dennis testified at his September 24, 2001 deposition that when he approached the bus stop on Desire Street at N. Dorgenois Street on the day of the accident he observed five or six children six to eight years old standing near, but back from, the bus stop. He believed the children were planning to board the bus. However, when he stopped the bus and opened the door, the children "took off" in the opposite direction from that in which the bus was traveling. When subsequently asked what side of the bus "did they run on," Dennis said the passenger side. Asked what procedure he was taught and trained to do before taking off from a bus stop, Dennis said a driver had to look both ways and check both of his mirrors, meaning the side-view mirrors. He indicated that he looked in both side-view mirrors that particular day. Dennis replied in the negative when asked whether he had seen any of the children when he checked his passenger and driver's side-view mirrors. He said he stopped his bus maybe eight to ten yards away from the bus stop after he was flagged down by the motorist. He did not recall how long it took for him to stop after he first noticed the man flagging him down. Dennis said the man said something to him about someone having injured themselves on the back of the bus. Dennis went to the back of the bus and saw a child lying on the ground. Dennis said that prior to this incident he had not had any problems with children riding on the outside of a bus. Dennis replied in the affirmative when asked whether a bus driver would be able to see a child standing by the driver's side rear tire. Dennis said he did not recall the bus hitting a bump or anything else unusual as he pulled off from the bus stop. Dennis said he was not disciplined or admonished in any way by TMSL as a result of the incident.
Donald Brooks, eight years old at the time of the accident, stated in his January 22, 2002 deposition that he got off the back of the bus because it was too hot back there. Asked what side of the bus he went around to, he confirmed that it had been the driver's side. He said the bus was stopped at that point. Counsel indicated, with an "x" on a photograph of a bus, where Donald said he was holding onto the side of the bus. The "x" was located at the bottom of a window located directly above the driver's side rear tire of the bus. Donald stated that he heard a man tell the bus driver that children were on the back of the bus, and he saw the driver "look through the window in the front, and I said *12 `He sees us'." Donald said he was trying to get off the bus but it pulled off, hit a bump, and he fell off. Donald later testified that as he was holding onto the side of the bus by the ledge of the open window, he could look through the "mirror" at the driver. Donald said he was holding himself up by his arms only. He stated that his arms were starting to hurt and he was trying to get off before the driver saw him, and then "he sees us, and he just pulled off, and I fell, and he rolled over me with this tire right here...." Donald said several times during his deposition that the bus rolled over his pelvis. Donald said he made eye contact with the bus driver in the driver's side-view mirror. He indicated that he was looking at the bus driver in the side-view mirror because he was afraid the driver would see him, make him get down, and go knock on his mother's door and tell on him. Donald estimated the bus traveled forty inches before it hit the bump and he fell.
Walter Lee Harrison, bus driver Zachary Dennis' supervisor, confirmed in his January 22, 2002 deposition that if a bus driver checks out his driver's side-view mirror he would be able to see a child standing by the rear tire or a child standing on the rear tire and holding onto a window. Harrison said that before a bus driver pulls away from a stop he is supposed to check his left side-view mirror to make sure there isn't any traffic coming up on the left side of the bus, and is supposed to check the right side-view mirror to make sure there is no one running to catch the bus. Harrison said that, hypothetically speaking, if someone got on a bus and informed the driver there were children on the back of the bus, the driver would have secured his bus, exited it, and gone around the back to make sure the bus was secure. He further said that the training is to always be cautious where there are children playing.

DISCUSSION
Appellate courts review the grant or denial of a motion for summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B). Summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action or defense in favor of one or more parties. La. C.C.P. art. 966(E); see also La. C.C.P. art. 1915(B)(1).
A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Hardy v. Bowie, 98-2821, p. 6 (La.09/08/99), 744 So.2d 606, 610. Simply put, a material fact "is one that would matter on the trial on the merits." Smith, id.
Relators argue that the trial court erred in denying their motion for summary judgment because: (1) the evidence shows that Donald Brooks was not run over by the bus; and (2) the bus driver owed no duty to Donald other than to properly operate *13 the bus, and there is no evidence of improper operation.
As to the first issue, it is to be noted that relators failed to include in their writ application a copy of any petition filed by plaintiff. Thus, plaintiff's precise allegations and claims are not known. However, even if the bus did not roll over Donald Brooks, one or more of the relators could still be held liable for at least part of the damages sustained by plaintiff as the result of injuries Donald suffered if those injuries are shown to have been caused in part by the negligence of the bus driver and/or the two other defendants. For example, if the bus driver saw Donald hanging on his bus but drove off anyway, Donald's fall from the bus and subsequent injuries, whether those injuries resulted from being rolled over by the bus or not, could certainly be found to be attributable, at least in part, to that act by the bus driver. Relators did not seek summary judgment on the issue of whether or not the bus rolled over Donald Brooks. Therefore, relative to this issue, the trial court did not err in denying the motion for summary judgment.
As to the second issue raised by relators, concerning duty, the trial court denied the motion for summary judgment because a genuine issue of material fact existed as to whether, inter alia, the bus driver saw Donald Brooks hanging on the side of the bus but drove off anyway. Plaintiff points out in her writ opposition that relators conceded for purposes of the motion for summary judgment that Donald was on the side of the bus before the accident. Donald Brooks stated in his deposition that he saw the bus driver looking at him in the driver's side-view mirror before he took off. The bus driver stated that he looked in both side-view mirrors and did not see Donald hanging on the driver's side of the bus before taking off. In their reply to plaintiff's writ opposition, relators state that Donald "speculated" that the bus driver saw him hanging on the side of the bus, and then cite authority for the proposition that "[p]robabilities, surmises, speculations, and conjectures are insufficient to prove negligence by a preponderance of the evidence." However, Donald stated:
A. And I see him looking through the window at me, first. Like I said, the man, he gave him the transfer, and I don't know what he's talking about, us or something. But the bus driver, he looked through the mirror right there (indicating).
A. My arms start to hurt right there, and I'm trying to get off before he sees us. And then he sees us, and he just pulled off, and I fell, and he rolled over me with this tire right here....
A. He looked in the mirror.
Q. Did you make eye contact with the operator? Do you know what "eye contact" means?
A. Yes.
Q. Did you?
A. Yes.
* * *
Q. Don, from what you are telling us do you think the bus driver saw you in that mirror before he pulled off?
A. Yes.
Q. What prompted you to look at the mirror? What made you look at that mirror?
A. Because the man was talking to him, and I thought he was going to tell us something. And he was looking through the mirror, and I was right there on the side.
Q. Did you see him looking in the mirror at anytime while he was talking?

*14 A. Yes.
Donald replied in the affirmative when asked "do you think the bus driver saw you in the mirror before he pulled off?" (Emphasis added). Arguably, Donald's affirmative answer to this question could be considered speculative. However, Donald also testified that he made eye contact with the bus driver. This testimony is not speculative. Donald said he was looking at the bus driver in the mirror because he was afraid the man who boarded the bus was going to tell the bus driver that the children were on the bus, and that in looking at the mirror he made eye contact with the bus driverthe bus driver looked at him at the same time he looked at the bus driver.
Relators focus on the issue of duty, arguing that the bus driver's duty to operate the bus safely did not encompass the risk that Donald Brooks would be injured by riding on the exterior of the bus.
Relators frame their argument based on plaintiff's cause of action being one in negligence. The threshold issue in a negligence action is whether the defendant owed the plaintiff a duty; whether a duty is owed is a question of law. Hanks v. Entergy Corp., 2006-477, p. 21 (La. 12/18/06), 944 So.2d 564, 579; Lemann v. Essen Road Daiquiries, Inc., XXXX-XXXX, p. 8 (La.3/10/06), 923 So.2d 627, 633. Whether a legal duty exists, as well as the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. Joseph v. Dickerson, 99-1046, p. 7 (La.1/19/00), 754 So.2d 912, 916; Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991).
Relators cite several decisions in which courts have found no duty on the part of a motor vehicle operator toward what relators characterize as "outriders." Relators first cite Leman v. Allstate Ins. Co., 522 So.2d 696 (La.App. 5 Cir. 1988). In Leman, the plaintiff sued the operator of a motor vehicle on behalf of his minor teenage daughter, alleging that the driver was negligent in failing to look in his side and rear-view mirrors to see that the girl was sitting on the back of his car before he drove off and caused her to fall. The driver testified that he had said goodbye to the girl and left her standing two feet away from the passenger side of his car. The trial court ruled in favor of the defendant. On appeal, the court cited the general duty of a motorist to maintain reasonable vigilance or see that which he should have seen and to exercise reasonable care under the circumstances. The appellate court found that the injuries sustained by the plaintiff's daughter did not fall within the scope of protection afforded by the motorist's duty to maintain reasonable vigilance and to exercise reasonable care under the circumstances. The appellate court specifically recognized that the situation may have been different had the driver, with knowledge that the girl was sitting on the back of his car, driven offwhich is essentially what Donald Brooks asserted happened in the instant case.
In a second case cited by relators, Piper v. Allstate Ins. Co., 260 So.2d 163 (La.App. 1 Cir.1972), which case was cited by the court in Leman, supra, the plaintiff was injured when she fell off the bumper of the defendant's pickup truck, which was being driven at the time by the defendant's fifteen-year old son. The youth was driving the pickup truck with two passengers in the cab and three high school band members sitting in or on the sides of the rear bed. The youth was hailed down by several other band members and/or pep squad members for a ride. Several more youths got onto or in the bed of the pickup truck, while three females, including the plaintiff, got onto the rear bumper, steadying themselves by holding onto the tailgate. The *15 driver proceeded forward. When he took a turn the plaintiff and the other two girls fell off. The trial court found no negligence on the part of the driver of the pickup truck, and dismissed the suit. On appeal, the plaintiff argued that the driver had a duty to ascertain if all the prospective passengers had gained a safe place in the bed of the pickup truck before he drove off. The plaintiff further argued that if the driver's view was obstructed he should have alighted from the truck and taken a position from which he could observe that all of the other youths had gained a place of safety. The appellate court rejected that argument, noting that the driver might have had such a duty "had he known or suspected that there were riders on his rear bumper." Piper, 260 So.2d at 166. The court noted that the evidence showed that the driver did not know the plaintiff and her two friends were on the rear bumper or that he had any cause to suspect that they were on the bumper. That is not the situation in the instant case, where Donald Brooks stated that he saw the bus driver eyeball him hanging on the side of the bus.
In the third case cited by relators, Matlock v. Allstate Ins. Co., 155 So.2d 484 (La.App. 3 Cir.1963), the plaintiff's decedent stood on the rear bumper of a disabled station wagon being pushed up a grade by a pickup truck, so as to lower the rear bumper of the station wagon so it could be pushed. The decedent fell off the bumper and struck his head on the asphalt pavement, subsequently dying as a result of the injury. The decedent's mother sued the drivers of both vehicles and their insurers. In finding no negligence on the part of the driver of the station wagon, the trial court, whose opinion was adopted in toto by the appellate court, correctly stated that the only duty owed the "outrider" decedent by the driver of the station wagon was to drive the vehicle in a careful and prudent manner and not to be careless or reckless in its operation. The court also found that the forty-four year old decedent was both contributorily negligent and had assumed the risk, both of which principles were then, in 1963, complete bars to recovery by a plaintiff. Assumption of the risk has been abolished as a defense by the Louisiana Supreme Court. See Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1125 (La.1988)("[G]iven the Legislature's adoption of a comparative fault system, we conclude that the assumption of the risk defense no longer has a place in Louisiana tort law."). Comparative fault principles now govern the defense of contributory negligence. See La. C.C. art. 2323.
Two of the decisions cited by relators in the instant case, Leman, supra and Piper, supra, are entirely consistent with the trial court's denial of their motion for summary judgment on the ground that there is a genuine issue of material fact as to whether the bus driver observed eight-year old Donald Brooks hanging on the side of the bus but drove off anyway. Matlock is distinguishable from the instant case if for no other reason than that the instant case involved an eight-year old child. The court in Matlock specifically noted that the plaintiff's decedent was forty-four years old and had owned and operated motor vehicles most of his adult life.
Generally, there is an almost legal universal duty on the part of a defendant in a negligence case to have conformed to the standard of conduct of a reasonable person in like circumstances. Joseph v. Dickerson, 99-1046, p. 7 (La.1/19/00), 754 So.2d 912, 916; Boykin v. Louisiana Transit Co., 96-1932, p. 10 (La.3/4/98), 707 So.2d 1225, 1231.
It would be absurd to argue that if bus driver Zachary Dennis observed Donald Brooks hanging on the side of the bus he *16 would have acted as a reasonable person in like circumstances if he had decided to drive off. Clearly, to do so would have been unreasonable. Even relators do not directly suggest that bus driver Zachary Dennis would not have been negligent under such a scenario.
Given that there is a genuine issue of material fact as to whether bus driver Zachary Dennis did see Donald Brooks hanging onto the side of the bus before he drove off, the trial court properly denied relators' motion for summary judgment.

CONCLUSION
For the foregoing reasons, the writ is denied.