| ELMORE TREGRE, II | NO. 23-C-124 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| BIS SERVICES, LLC, ET AL. | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 796-885, DIVISION "D"
HONORABLE SCOTT U. SCHLEGEL, JUDGE PRESIDING

October 04, 2023

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, Jude G. Gravois, Marc E. Johnson, and Robert A. Chaisson

**AFFIRMED**
    **MEJ**
    **FHW**
    **RAC**

**DISSENTS WITH REASONS**
    **SMC**

**DISSENTS FOR THE REASONS ASSIGNED BY CHEHARDY, C.J.**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
ELMORE W. TREGRE, II
     David P. Salley
     Stephen C. Resor
     Michael W. Rutledge
     James G. Albertine, III
     Robert L. Keller, II

COUNSEL FOR DEFENDANT/RELATOR,
BIS SERVICES, LLC
     Michael W. McMahon
     Kirk N. Aurandt
     Paul R. Trapani, III

COUNSEL FOR DEFENDANT/RESPONDENT,
PHYLWAY CONSTRUCTION, LLC
     Alex P. Tilling

COUNSEL FOR DEFENDANT/RESPONDENT,
VIXEN, LLC
     James A. Prather
     Joshua Dierker

COUNSEL FOR DEFENDANT/RESPONDENT,
EAST JEFFERSON LEVEE DISTRICT AND SOUTHEAST LOUISIANA
FLOOD PROTECTION AUTHORITY -EAST
     Mark E. Hanna
     Trevor M. Cutaiar
     John Zazulak

**JOHNSON, J.**

Relator, BIS Services, LLC ("BIS"), seeks supervisory review of the 24th Judicial District Court's December 27, 2022 judgment denying its motion for summary judgment. For the reasons that follow, we affirm the district court's judgment.

*FACTS AND PROCEDURAL HISTORY*

In 2017 the U.S. Army Corps of Engineers awarded BIS a $4.5 million Hurricane and Storm Damage Risk Reduction System contract for work on the levee adjacent to the All-Weather Access Road (AWAR) in Jefferson Parish along the south shore of Lake Pontchartrain. The construction project involved relocating existing concrete access ramps, installing turf reinforcement "armoring" systems on the levee, replacing the turf grass, and installing an irrigation system, followed by periodic watering and mowing.

The East Jefferson Levee District granted a right-of-way for the project. Although the primary function of the AWAR is for levee maintenance, the District specified that the AWAR is required to be open "at all times" for public recreational use, and "pedestrians and cyclists shall have right of way."

At approximately 5:00 p.m., during daylight hours, on July 25, 2018, plaintiff, an avid cyclist, was riding his bicycle on the AWAR near the Ridgelake ramp in Metairie. Plaintiff testified in his deposition that he was familiar with that section of the AWAR; before his accident, he had ridden on the Ridgelake ramp numerous times between January and July 2018. Plaintiff also stated that he had substantial experience in riding his bike in windy and wet conditions. Plaintiff testified that on the day of the accident, while at the top of the ramp, he saw the water on the pavement, the silt fences, and the other implements of construction. When plaintiff and two companions road their bikes down the Ridgelake ramp headed west, with plaintiff in the lead, plaintiff's bike tire hit a wet patch on the

ramp, causing his bike to slip and plaintiff to fall and suffer a broken femur, broken humerus, and crushed humeral head.[1] Initially, plaintiff testified that he saw no mud on the road on the day of his accident. However, after looking at a picture of the area that was taken a day after his accident, plaintiff stated he believed there was also mud in the area where he slipped. He agreed, though, that he had no independent recollection to suggest that the area was this way on the day of his accident.

Tommy Ridgley, one of plaintiff's cycling companions who followed plaintiff down the ramp, testified in his deposition that the area was a little muddy and that he saw a greenish substance. David Songy was the second companion who followed Ridgley down the ramp. He described the wet area to be "more like algae" that was "building up over time." Mr. Songy also testified that another accident occurred in the same spot within a week of plaintiff's accident. Mr. Ridgley testified that plaintiff was the "most experienced" cyclist among the three of them, and that all three had ridden in this area, and up and down the Ridgelake ramp, numerous times. When they reached the top of the approach ramp the cyclists were in single-file order; they then slowed down to descend the other side of the levee, because they could see that there were wet conditions, and because more cyclists were coming their way from the opposite direction, which required a sharp right turn to continue on the bike path while avoiding the oncoming bicycle traffic. Mr. Ridgley saw plaintiff's wheel "wobble" and stated that plaintiff "went down quickly." Mr. Ridgley testified that it "was always a little muddy" in the area where plaintiff fell, and that he saw a greenish-colored algae substance there.

---

[1] Plaintiff described the accident as follows: "as my front wheel slid ever so slightly through the patch of wet pavement, when it hit the next piece of dry pavement, it actually gripped. It gripped really well. Unfortunately, my back tire hit the same spot of pavement as the front that had slipped, and I stayed in that wet [spot] and … my back wheel went out from under me. I'll describe it as a fishtail motion."

The access-ramp area where the accident occurred was a known construction zone, and orange cones, orange temporary fencing, and silt fencing were visible adjacent to the accident site. Mr. Adrianne Diaz, the BIS Site Safety and Health Officer, testified that at approximately 8:30 on the morning of the accident he inspected the AWAR, including the Ridgelake ramp, and found no mud or debris in the area. Diaz returned to the area around 4:45 p.m. and saw that the AWAR was wet because of the ongoing turf grass irrigation, but he did not see any mud or debris. He returned again after the accident.[2] A photograph taken after the accident

---

[2] Mr. Diaz explained that when he arrived at the scene immediately after the accident, he did not see any mud:

> Q: Okay. And when you were out at the site following Mr. Tregre's accident, we can see the pictures that have, you know, wet concrete or asphalt, whatever it is, but did you see any actual mud flows, if you will, or mud –
> A: No, sir.
> Q: -- on the roadway?
> A: No.
> ***
> Q: In the area where Mr. Tregre fell and this water and alleged to be mud, prior to his fall had you advised anyone to take any corrective action concerning that area of the project at all?
> A: No.
> ***
> Q: So when you found debris out there, did you report that to Mark Silver?
> A: Yes.
> Q: In these QC notes?
> A: Yes.
> Q: If you found debris on the AWAR, after you report it to Mark, [ ] do you instruct somebody to clean it up?
> A: Yes. I would let Jay Manifold know this such and such area needs to be addressed, you bring a sweeper or whatever to clean it up.
> ***
> Q: Did you walk the project that morning?
> A: Yes.
> Q: And earlier you said you also walked the project at 4 o'clock; is that right?
> A: Yes.
> ***
> Q: After the accident, did you walk actually up the ramp or in the wet area?
> A: Yes.
> Q: Did you see any mud on your shoes?
> A: No.
> Q: Did you find the area slippery?
> A: Slippery?
> Q: With mud?
> A: With mud, no.
> Q: What do the orange cones tell you?
>     Mr. Rutledge: Object to form.
> A: Indication of a work hazard, work zone.
> Q: What about the orange fencing? What does that tell you?
> A: It's another sign indicating work zone, construction work.

shows several wet spots in the area of the ramp, orange cones, orange mesh fencing, and a black silt fence.

Plaintiff filed suit against BIS asserting claims in general negligence under La. Civ. Code arts. 2315 and 2316, and premises-liability claims under La. Civ. Code arts. 2317 and 2317.1. In addition to the allegations that an unreasonably dangerous condition on the AWAR caused his accident, plaintiff asserted that BIS "failed to construct the Project in a reasonable and workmanlike manner," thereby creating the unreasonably hazardous condition; failed to inspect the area and/or prevent or remove the condition; and "violated the Project Specifications by failing to keep the All Weather Access Road free of mud, tracking, spillage and/or other surface pollution from their equipment and operations."[3]

BIS and its subcontractors filed motions for summary judgment seeking dismissal of plaintiff's claims against them.[4] BIS argues that the wet pavement presented a "clear and obvious" hazard that could not, as a matter of law, pose an unreasonable risk of harm either in general negligence or under a theory of premises liability. BIS further argued that no genuine issues of material fact exist.

In opposing BIS's motion for summary judgment, plaintiff argued that BIS failed to adhere to the contract specifications requiring BIS to keep the AWAR "free of mud, tracking, spillage and/or other surface pollution…. Contractor shall take whatever means required (i.e., street cleaners, manual labor, water trucks with sprayers) as often as needed to maintain clean streets near the work site." According to plaintiff, BIS's failure to keep the AWAR free of mud and surface

---

[3] Plaintiff named the owners of the AWAR (the East Jefferson Levee District and the Southeast Louisiana Flood Protection Authority East), and other subcontractors, including Phylway Construction, LLC, and Vixen, LLC, as additional defendants.

[4] The only motion for summary judgment before this Court is BIS's motion. The trial court granted the motion for summary judgment filed by the East Jefferson Levee District and the Southeast Flood Protection Authority East, and those entities have been dismissed from the case.

23-C-124                                           4

pollution constituted a breach of the terms of the contract as well as a breach of its duty to plaintiff to maintain the area free of hazardous and/or unreasonably dangerous conditions.

The trial court denied BIS's motion for summary judgment, finding that genuine issues of material fact remain, including whether there was mud or a greenish substance on the wet pavement that created an unreasonably dangerous condition. BIS seeks supervisory review of that ruling. Initially finding potential merit in BIS's arguments, we granted the parties an opportunity to provide additional briefing and to request oral argument, if desired, pursuant to La. C.C.P. art. 966 H. After oral argument, the matter was assigned to a five-judge panel and reargued, pursuant to La. Const. Art. V, § 8(B).

*LAW AND DISCUSSION*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3). The burden of proof rests with the mover. La. C.C.P. art. 966 D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id*. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.; *see also Robinson v. Otis Condominium Assoc., Inc.*, 20-359 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 360-61, *writ denied*, 21-0343 (La. 4/27/21), 314 So.3d 837.

We review the denial of a motion for summary judgment *de novo. Bourgeois v. Allstate Ins. Co.*, 15-451 (La. App. 5 Cir. 12/23/15), 182 So.3d 1177, 1181. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue as to material fact and whether the mover is entitled to judgment as a matter of law. *Richthofen v. Medina*, 14-294 (La. App. 5 Cir. 10/29/14), 164 So.3d 231, 234, *writ denied*, 14-2514 (La. 3/13/15), 161 So.3d 639.

Plaintiff asserts claims against BIS under La. Civ. Code arts. 2315, 2316, 2317, and 2317.1. La. Civ. Code art. 2315(A) states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2316 states: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. Civ. Code art. 2317 states: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by … the things which we have in our custody." La. Civ. Code art. 2317.1, which governs negligence claims against a property owner or custodian, provides, in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

"Whether a claim arises in negligence under La. Civ. Code art. 2315 or in premises liability under La. Civ. Code art. 2317.1, the traditional duty/risk analysis is the same." *Farrell v. Circle K Stores, Inc.*, 22-0849 (La. 3/17/23), 359 So.3d 467, 473.

In *Farrell*, the Louisiana Supreme Court reversed the trial court's ruling denying the defendant's motion for summary judgment in a premises liability suit

that was filed after the plaintiff slipped and fell while trying to traverse a large puddle of water at the edge of a gas station parking lot. In that case, the Supreme Court cleared up the admitted confusion in the jurisprudence surrounding the application of the duty/risk analysis when assessing an allegedly unreasonably dangerous condition in general negligence or premises liability claims.

The *Farrell* Court first reaffirmed the well-settled rule that under the duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) proof of actual damages (the damages element). *Id*. at 473 (citing *Malta v. Herbert S. Hiller Corp.*, 21-209 (La. 10/10/21), 333 So.3d 384, 395). *See also Boykin v. La. Transit Co., Inc.*, 96-1932 (La. 3/4/98), 707 So.2d 1225, 1230. If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318, 326.

The *Farrell* Court then explained that Louisiana's jurists have exhibited a tendency to conflate the duty and the breach elements when evaluating an allegedly unreasonably dangerous condition. The duty element, which is a question of law, examines whether there is any legal support for Plaintiff's claim that defendant owed him a duty. Here, La. Civ. Code arts. 2315, 2316, 2317, and 2317.1 require the custodian of immovable property to discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. *Farrell*, 359 So.3d at 473-74. Like the defendant in *Farrell*, BIS owed such a duty to plaintiff here.

Whether there is a *breach* of that duty is a mixed question of fact and law, which we assess through application of the risk/utility balancing test by evaluating: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Id.* (citing *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So.3d 851, 856).

> Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial.

*Farrell*, 359 So.3d at 478. In this case, whether or not summary judgment is appropriate turns on the second prong of the risk/utility balancing test which addresses the likelihood and magnitude of the harm, including whether a condition is open and obvious. *See id.*

The ruling in *Farrell* does provide that a slippery substance contained within the water may fall short of creating an unreasonably dangerous condition. *Id.* at 479. However, noting the distinguishing facts in this case, after performing a risk-utility analysis, we find that reasonable minds could differ in their assessments of the likelihood and magnitude of the harm posed by the condition at the base of the ramp.

In *Farrell*, *supra*, the majority found that the likelihood and magnitude of harm was "minimal" after considering the location, size, and condition of the pool of water, and the fact that it was "apparent to all who may encounter it." 359 So.3d at 478-79. The injured plaintiff in *Farrell* was walking her dog near a large pool of water at the edge of a gas station parking lot -- an area into which the proprietor had a reasonable expectation that customers would not venture.

To contrast, in the instant case, the condition was located on the AWAR ramp, plaintiff presented evidence that the AWAR's secondary use was for the recreation of pedestrians and cyclists, and the contractors working on the project had a contractual obligation "to take whatever means required [. . .] as often as needed to maintain clean [AWAR] near the work site". The record contains conflicting evidence regarding the existence of mud and/or a greenish algae-like substance within the wet area where plaintiff's accident occurred.[5] The parties also dispute whether the intervals at which the ramp was cleaned were adequate. On summary judgment, we have no authority to weigh the evidence or to make credibility determinations. *See*, *e.g.*, *Boros v. Lobell*, 15-55 (La. App. 5 Cir. 9/23/15), 176 So.3d 689, 693.

Further, although the part of the ramp where plaintiff's accident occurred was clearly marked as a construction area, it is not certain that *any* reasonable AWAR user would sufficiently be put on notice of the danger posed by the slippery road conditions. There was no posted speed limit, and the ramp remained accessible to invited recreational pedestrians and cyclists whose very presence and safety had been contractually provided for.

> For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous.

*Farrell*, 359 So.3d at 478. The *Farrell* court noted that the particular plaintiff's "knowledge and appreciation of the allegedly hazardous condition is not determinative" for purposes of summary judgment proceedings, though it may be considered in assessing fault. *Id.* The plaintiff in this case happens to be a very

---

[5] Plaintiff's cycling companions testified to seeing a greenish algae substance or muddy conditions. However, the BIS employee who, on the day of the accident, inspected the site both in the morning and at approximately 4:45 p.m., found no mud or debris in the area.

experienced cyclist, and an architect with knowledge of the dangers worksites, such as the levee project, pose. However, we cannot find that *any* reasonable cyclist's analysis of the likelihood and magnitude of the harm presented by the conditions at the end of the AWAR ramp that day would necessarily result in a decision to dismount and avoid the conditions at the ramp on the day of the accident. Therefore, we find that the possible outcomes of the risk/utility balancing test at this point in the litigation do not preclude a finding that the condition plaintiff encountered was unreasonably hazardous and that Relator breached a duty to plaintiff.

## *DECREE*

Considering the foregoing, the district court's December 27, 2022 judgment denying BIS's motion for summary judgment is affirmed.

**AFFIRMED**

| ELMORE TREGRE, II | NO. 23-C-124 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| BIS SERVICES, LLC, ET AL. | COURT OF APPEAL |
| | STATE OF LOUISIANA |

**CHEHARDY, C.J., DISSENTS WITH REASONS**

I respectfully dissent. In my view, after conducting the risk/utility balancing test outlined in *Farrell v. Circle K Stores, Inc.*, 22-0849 (La. 3/17/23), 359 So.3d 467, 473, the wet conditions on the AWAR ramp were open and obvious and easily observed by all who looked, and BIS could not be found to have breached the duty of care it owed to plaintiff. Accordingly, I would grant BIS's writ application, grant its motion for summary judgment, and dismiss plaintiff's claims against BIS.

Under the first prong of the risk/utility balancing test—evaluating the utility of the complained-of condition—the very purpose of the ongoing construction project on the AWAR was to enhance hurricane and storm protection through reinforcement of the levees by, among other things, replacing the turf grass, installing an irrigation system, and engaging in periodic watering of the area. This purpose could not be achieved without water in the area. "If [the alleged defect] was meant to be there, it often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Farrell*, 359 So.3d at 474. Unlike the large puddle of water at issue in *Farrell* for which there was no discernable utility, there was significant utility in the wet conditions at the site of this ongoing levee construction project.

The second prong of the risk/utility balancing test assesses the likelihood and magnitude of the harm, including the obviousness and apparentness of the condition. The Supreme Court explains:

> The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous. The magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each. The likelihood and magnitude of the harm includes a consideration of the open[ness] and obviousness of the condition.

*Id.*

All of the testimony in the record before us suggests that the wet area was very apparent to anyone who was near. Plaintiff himself testified that he saw the wet pavement from the top of the ramp, and as he descended from the ramp, he slowed down because continuing on the bike path required a right turn. He saw that other cyclists were coming from the opposite direction, and he wanted to remain in his lane as much as possible rather than veering left before making the necessary right turn. Plaintiff stated that he used both of his hand brakes when he was riding down the ramp, but he stopped braking once he hit the wet areas, because "you don't want to be braking when you're crossing wet pavement."

Anyone who encountered the area would not look at the Ridgelake ramp and conclude that it presents a likelihood of great harm, as record testimony established that cyclists passed through that area often. Considering that the wet conditions were open and obvious and that the risk of harm was not great, I find that the second prong of the risk/utility balancing test weighs against the alleged defect being found unreasonably dangerous.

As to the cost of preventing the harm under the third prong of the risk/utility balancing test, there is not sufficient evidence of these costs in the record, but I

find this prong less relevant than the other factors, given that the area already contained orange cones and temporary fencing, delineating a construction area.

Regarding the fourth prong—the nature of the plaintiff's activities in terms of social utility, or whether the activities were dangerous by nature—bicycle riding is not dangerous *per se* but can become dangerous if a rider lacks sufficient skill or fails to heed observable dangers; if the bicycle lacks stability; or any number of other factors. In my view, this prong weighs neither for nor against a finding that the conditions were unreasonably dangerous.

Moreover, although the record contains conflicting evidence regarding the existence of mud and/or a greenish algae-like substance within the wet area where plaintiff's accident occurred, and while I agree with the majority that, on summary judgment, we have no authority to weigh the evidence or to make credibility determinations, this issue fails to raise a genuine issue of *material* fact and thus does not preclude granting summary judgment in this case. In *Farrell*, the Supreme Court explained that "the allegedly hazardous condition, be it the pool of water at the edge of the parking lot *or the slippery substance contained within the water*, was not an unreasonably dangerous condition." 359 So.3d at 479 (emphasis added). Under the present facts, even assuming that mud or an algae-like substance was present at the time and exact place of plaintiff's accident, *Farrell* suggests that these conditions in and of themselves fall short of creating an "unreasonably dangerous" condition.

Considering the risk/utility balancing test as a whole, including the substantial utility of the construction project, the openness and obviousness of the wet conditions, and the generally low likelihood of great harm, I find that the wet conditions at the Ridgelake ramp did not present an unreasonable risk of harm. Where, as here, the complained of condition is open and obvious and fails to present an unreasonable risk of harm, *Farrell* dictates that the custodian cannot be

found to have breached the duty of care it may owe the plaintiff. Accordingly, I

find BIS is entitled to summary judgment.

ELMORE TREGRE, II

NO. 23-C-124

VERSUS

FIFTH CIRCUIT

BIS SERVICES, LLC, ET AL.

COURT OF APPEAL

STATE OF LOUISIANA

**GRAVOIS, J., DISSENTS FOR THE REASONS ASSIGNED BY CHEHARDY, C.J.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 4, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-C-124

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. SCOTT U. SCHLEGEL (DISTRICT JUDGE)
HON. JOSEPH A. MARINO, III (DISTRICT JUDGE)

DAVID P. SALLEY (RESPONDENT)
KIRK N. AURANDT (RELATOR)
ALEX P. TILLING (RESPONDENT)
TREVOR M. CUTAIAR (RESPONDENT)

MICHAEL W. RUTLEDGE (RESPONDENT)
MICHAEL W. MCMAHON (RELATOR)
JAMES A. PRATHER (RESPONDENT)

STEPHEN C. RESOR (RESPONDENT)
PAUL R. TRAPANI, III (RELATOR)
MARK E. HANNA (RESPONDENT)

**MAILED**
JAMES G. ALBERTINE, III (RESPONDENT)
ROBERT L. KELLER, II (RESPONDENT)
ATTORNEY AT LAW
365 CANAL STREET
SUITE 1710
NEW ORLEANS, LA 70130

JOHN ZAZULAK (RESPONDENT)
ATTORNEY AT LAW
701 POYDRAS STREET
SUITE 600
NEW ORLEANS, LA 70139

JOSHUA DIERKER (RESPONDENT)
ATTORNEY AT LAW
THREE SANCTUARY BOULEVARD
THIRD FLOOR
MANDEVILLE, LA 70471